**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL SAWYER and<br>LATRONIA SANDERS | **HONORABLE KAREN M. WILLIAMS**<br><br>Crim. No. 25-619 (KMW)<br><br>**OPINION** |

**WILLIAMS, District Judge.**

**THIS MATTER** comes before the Court upon Defendant Michael Sawyer's ("Sawyer") Motion to Dismiss the Indictment (Dkt. No. 32); Sawyer and Defendant Latronia Sanders' ("Sanders," collectively with Sawyer, "Defendants") Motion to Dismiss the Superseding Indictment (Dkt. Nos. 48, 49); Defendants' Motion to Compel discovery under *Brady v. Maryland*, 373 U.S. 83 (1963) (Dkt. No. 75); and Sawyer's Motion to Disclose the Identity of a Confidential Source (Dkt. No. 76). Defendants challenge the authority of the officials supervising the United States Attorney's Office for the District of New Jersey when the Government obtained those indictments and request dismissal with prejudice. Since the motions were filed, a lawfully appointed United States Attorney has assumed office, a grand jury has returned a Second Superseding Indictment, and the United States Attorney has independently ratified the earlier charging decisions. (Dkt. Nos. 57, 70-1.)

For the reasons below, the Motions to Dismiss (Dkt. Nos. 32, 48) and Motion to Compel (Dkt. No. 75) are **DENIED**. Sawyer's Motion to Disclose (Dkt. No. 76) is **GRANTED**. The Court does not decide any challenge to the Second Superseding Indictment, which is not the subject of the pending motions.

## I. BACKGROUND

The charges concern an alleged scheme involving the Newark Lead Service Line Replacement Program. The Government alleges that Sawyer, an executive of JAS Group Enterprise, Inc., and Sanders, a foreperson, caused the submission of misleading information concerning lead service line replacement work and thereby obtained payment for work that was not completed as represented. The Court recounts these allegations solely to provide context and expresses no view on their merits. (Dkt. Nos. 30, 45, 57.)

On October 8, 2025, a grand jury returned an Indictment charging conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. (Dkt. No. 30.) At the time, Alina Habba purported to serve as Acting United States Attorney. Sawyer moved to dismiss that Indictment on October 22, 2025, contending that Habba lacked lawful authority and had participated in prosecutorial decision-making, including a July 22, 2025 meeting concerning potential declination or civil resolution. (Dkt. No. 32 at 7–8.) Following the Third Circuit's decision in *United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025), Habba departed her position. Chief Judge Brann thereafter dismissed the request for her disqualification as moot but left the motion to dismiss for resolution by this Court. (Dkt. No. 48 at 5–6 (citing Dkt. No. 41).)

On January 22, 2026, a grand jury returned a Superseding Indictment adding a substantive wire fraud count under 18 U.S.C. § 1343. (Dkt. No. 45.) Sawyer moved to dismiss that indictment, challenging the authority of an Executive Office composed of Philip Lamparello, Jordan Fox, and Ari Fontecchio, which then supervised the District's United States Attorney's Office. (Dkt. No. 48 at 7, 10–13.) Sanders joined that motion. (Dkt. No. 49.) Sawyer maintains that obtaining successive indictments under unauthorized leadership reflects misconduct and caused prejudice. (Dkt. No. 71 at 2–6, 12–13.)

On April 24, 2026, following the court appointment of Robert Frazer as United States Attorney, a grand jury returned a Second Superseding Indictment charging the same two offenses as the first Superseding Indictment. (Dkt. Nos. 57, 70 at 2.) In a June 5, 2026 letter, Frazer stated that he reviewed the earlier indictments and internal materials explaining the charging decisions, and independently affirmed the decisions to present those charges to the grand jury. (Dkt. No. 70-1 at 1–2.) The Government contends these developments moot the motions and, alternatively, foreclose dismissal. (Dkt. No. 70 at 2–6.) Sawyer responds that ratification and reindictment cannot remedy past structural injury, delay, and alleged business and reputational harm. (Dkt. No. 71 at 1–2, 12–14.)

## II. LEGAL STANDARD

A district court has limited authority to dismiss a criminal indictment under its inherent supervisory powers. Such dismissal requires governmental misconduct, prejudice to the defendant, and the absence of a less severe remedy adequate to address that prejudice. *United States v. Wright*, 913 F.3d 364, 371 (3d Cir. 2019). The Supreme Court has likewise cautioned that dismissal for errors in grand jury proceedings generally requires prejudice and that supervisory power cannot be used to evade the harmless-error principle. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254–57 (1988). Even where a constitutional violation is assumed, the remedy should be tailored to the injury and should not unnecessarily interfere with the criminal proceeding. *See United States v. Morrison*, 449 U.S. 361, 364–67 (1981).

In *United States v. Gussie*, 51 F.4th 535, 539 (3d Cir. 2022), the Third Circuit held that a superseding indictment returned by an untainted grand jury cured the possible prejudice arising from a biased juror's participation in the original indictment. The court assumed prejudice in the original proceeding and considered whether the later charging proceeding neutralized the alleged

taint. *Id.* at 540–41. Separately, ratification by a properly authorized official can cure certain defects attributable to an improperly appointed predecessor if the ratifying official has authority, knows the relevant decision, and makes a detached and considered affirmation. *Kajmowicz v. Whitaker*, 42 F.4th 138, 147–48 (3d Cir. 2022).

## III. DISCUSSION

### a. Motions to Dismiss

#### *i. The motions are not automatically moot by reason of supersession.*

The Government argues that the Second Superseding Indictment moots the challenges to the earlier indictments. (Dkt. No. 70 at 2–3.) The Court declines to adopt that proposition categorically. A superseding indictment does not necessarily extinguish the earlier indictment; the Third Circuit has recognized that an original indictment may remain validly pending after supersession. *Gussie*, 51 F.4th at 540 (citing *United States v. Friedman*, 649 F.2d 199, 203 (3d Cir. 1981)). The Government has not identified an order formally dismissing Dkt. Nos. 30 or 45. Therefore, the Court addresses the motions on their merits rather than presuming the earlier indictments were automatically dismissed.[1]

#### *ii. Dismissal is not an appropriate remedy for the asserted appointment defects.*

The Court does not minimize the appointment concerns underlying these motions. In *Giraud*, the Third Circuit rejected the asserted authority under which Habba purported to serve and affirmed her disqualification. 160 F.4th at 407. In *United States v. Naviwala*, No. 24-99, 2026 WL 658885 (D.N.J. Mar. 9, 2026), Chief Judge Brann addressed the subsequent Executive Office arrangement and ordered disqualification while declining to dismiss the indictment. And in a later

[1] This conclusion does not mean that the Government may proceed simultaneously to judgment on duplicative charging instruments; it simply recognizes the distinction between supersession and formal dismissal.

decision, Chief Judge Brann concluded that Frazer's appointment complied with 28 U.S.C. § 546(d) and considered the availability of ratification. *United States v. Naviwala*, No. 24-99, 2026 WL 1031149, at *1, 6 (D.N.J. Apr. 16, 2026). Those district court decisions are persuasive, not binding, and Sawyer identifies an important factual distinction: unlike defendants whose charging decisions preceded the challenged appointments, he alleges that both of his earlier indictments were obtained during periods of unauthorized leadership. (Dkt. No. 71 at 2–5.)

The Court need not decide whether every action taken in obtaining the earlier indictments was unauthorized, or whether the challenged appointment arrangements independently establish misconduct within the meaning of *Wright*. Even assuming those propositions in Defendants' favor, the relief requested does not follow. The decisive questions are whether the asserted defects have left prejudice requiring dismissal and whether the subsequent proceedings have adequately addressed any such prejudice. *See Wright*, 913 F.3d at 371; *Gussie*, 51 F.4th at 539-40.

The intervening proceedings are substantial. Frazer was appointed to the office under the procedure approved in *Naviwala*. A grand jury thereafter returned the Second Superseding Indictment (Dkt. No. 57), containing the same charges as the Superseding Indictment (Dkt. No. 45). Frazer also expressly represented that he reviewed the original and first Superseding Indictments and internal charging materials and independently affirmed the earlier decisions. (Dkt. No. 70-1 at 1–2.) His stated review corresponds to the independent, considered ratification discussed in *Kajmowicz*, 42 F.4th at 147–48. Ratification of a prosecutor's charging decision is not a substitute for a grand jury's decision to indict; here, however, the Government also obtained a new grand-jury indictment after Frazer assumed office. Together, these steps substantially address the concern that this prosecution continues solely by virtue of decisions made under the earlier leadership structures. *See Gussie*, 51 F.4th at 539–41.

Sawyer nevertheless maintains that Habba personally participated in a meeting concerning whether the matter should proceed criminally, that the Government knowingly sought a second indictment under disputed leadership, and that these events delayed the case and injured his business and reputation. (Dkt. No. 71 at 4–8, 12–13.) Those allegations distinguish this case from prosecutions in which an unauthorized official merely signed an indictment. But they do not establish that the present prosecution depends on an unreviewed charging instrument or that the defense has been impaired in a manner requiring dismissal. The record before the Court does not establish that exculpatory evidence was lost, witnesses became unavailable, or the ability to contest the charged conduct was otherwise compromised because of the appointment disputes. Nor does the asserted loss of an opportunity to obtain a declination or civil resolution establish an entitlement to such a disposition. The Court does not discount claimed business or reputational consequences; it concludes only that those allegations do not establish the kind of unremedied prejudice justifying dismissal of these indictments under *Wright*.

Sawyer also invokes presumed structural prejudice under *Cirko ex rel. Cirko v. Commissioner of Social Security*, 948 F.3d 148, 159–60 (3d Cir. 2020). (Dkt. No. 71 at 12–13.) *Cirko* addressed the remedy for an Appointments Clause challenge to administrative adjudicators; it did not hold that an appointment defect affecting prosecutorial supervision requires dismissal with prejudice of criminal charges later presented by a properly authorized prosecutor to a grand jury. Even assuming an appointment defect warrants relief without the usual showing of individualized prejudice, that does not establish that the only permissible remedy is terminating this prosecution. *See Morrison*, 449 U.S. at 364–67; *Gussie*, 51 F.4th at 540–41. The intervening appointment, independent review, and new charging proceeding are material to the remedial inquiry.

Nor has Sawyer shown that dismissal is required because of delay. His submissions attribute delay to the appointment disputes and successive charging proceedings, but they do not provide a developed showing establishing a Sixth Amendment speedy-trial violation under the applicable balancing inquiry. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972) (considering length of delay, reason for delay, assertion of the right, and prejudice). The Court does not hold that supersession resets any statutory clock or erases prior delay. *See United States v. Stevenson*, 832 F.3d 412, 419–20 (3d Cir. 2016). It holds only that the delay allegations advanced in support of these appointment-based motions do not establish a basis to dismiss the challenged indictments with prejudice. Any distinct, properly presented speedy-trial challenge is not adjudicated here.

Finally, dismissing the earlier indictments as a judicial sanction is not required simply because the Second Superseding Indictment is now operative. Rule 48(a) provides a procedure for the Government to seek leave to dismiss charges, and Rule 48(b) permits judicial dismissal for specified unnecessary delay. Neither makes dismissal automatic upon supersession. Because Defendants have not established prejudice requiring dismissal or the inadequacy of the intervening corrective steps, the Court declines to exercise its supervisory authority to dismiss the Indictment (Dkt. No. 30) or first Superseding Indictment (Dkt. No. 45). *Wright*, 913 F.3d at 371. This ruling does not prevent the Government from seeking their formal dismissal under Rule 48(a).

***iii. The Court Does Not Adjudicate the Second Superseding Indictment.***

The pending motions identify Dkt. Nos. 30 and 45 as the indictments to be dismissed. Sawyer's reply likewise requests dismissal of the first Superseding Indictment with prejudice. (Dkt. No. 71 at 14.) No pending motion asks the Court to dismiss the Second Superseding Indictment (Dkt. No. 57). The Court considers that indictment as an intervening event relevant to remedy, not as an independently challenged charging instrument. Accordingly, this Opinion expresses no view on any challenge to Dkt. No. 57 that is not presently before the Court.

**b. <u>Motion to Compel Production of *Brady* Materials</u>**

Defendants separately move to compel the Government to produce investigative agents' rough interview notes, grand jury testimony and exhibits, immigration and criminal-history information, confidential-source reports, and data from witness Jamie Cabrera's cellphone. They also seek an order requiring the Government to identify favorable evidence within its substantial prior discovery productions. (Dkt. No. 75 at 7, 12-13, 20-26, 30–43.) The Government opposes the requested relief, represents that its agents preserved rough notes, denies knowing of undisclosed *Brady* material in its earlier productions, and states that it will satisfy its continuing disclosure obligations. (Dkt. No. 79 at 6–14.)

Under *Brady*, the prosecution must disclose evidence favorable to the accused that is material to guilt or punishment, including material impeachment evidence. *Brady*, 373 U.S. at 87; *Giglio v. United States*, 405 U.S. 150, 154–55 (1972); *United States v. Bagley*, 473 U.S. 667, 676 (1985). The obligation extends to favorable evidence known to others acting on the Government's behalf in the case. *Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995). But *Brady* is not a general discovery rule, and a request to search entire categories of investigative files does not, without more, establish that the Government is withholding constitutionally required material. *See United States v. Agurs*, 427 U.S. 97, 109–10 (1976). The question presented by this Motion is whether Defendants have demonstrated that additional disclosure by the Government is presently required under its constitutional and discovery obligations, rather than whether particular records may be independently obtainable through other authorized procedures.

*i. <u>Agent rough notes and asserted discrepancies.</u>*

The Third Circuit requires preservation of investigative rough notes so that any disclosure obligations may be evaluated. *United States v. Vella*, 562 F.2d 275, 276 (3d Cir. 1977); *United*

*States v. Ammar*, 714 F.2d 238, 259-60 (3d Cir. 1983). However, preservation is distinct from an automatic right to production of every note. *See United States v. Ramos*, 27 F.3d 65, 68–70 (3d Cir. 1994). Defendants identify differences between an EPA memorandum memorializing Chris Belcuore's interview and the contemporaneous handwritten notes that were produced, particularly concerning when partial replacements were permissible and whether work subsequently complied with changed procedures. (Dkt. No. 75 at 14–20, 25–29; Dkt. Nos. 75-6, 75-7.) The Court has considered those identified differences. They do not, on the present showing, demonstrate that other unproduced notes contain materially favorable statements or that the Government improperly instructed an agent to omit exculpatory information. Nor does the fact that some interviews were interpreted from Spanish, without a concrete inconsistency, establish an undisclosed *Brady* violation. The request to compel all rough notes, or to require a wholesale *in camera* review, is denied without prejudice to a specific, supported request concerning particular notes or witnesses.

*ii.* ***Grand Jury Materials***

Grand jury proceedings are presumptively secret. Fed. R. Crim. P. 6(e)(2); *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218–19 (1979). A party seeking disclosure under Rule 6(e)(3)(E)(ii) must establish a particularized need that outweighs the interest in secrecy. *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1988). Defendants speculate that testimony before the grand jury may contain favorable accounts or differ from interview reports. (Dkt. No. 75 at 20–21, 35–36.) They identify no specific grand jury instruction that was improper, no concrete basis to conclude that the grand jury was misled, and no particular testimony shown to be necessary to avoid an injustice. The Government represents that it is unaware of undisclosed *Brady* information in the transcripts. (Dkt. No. 79 at 7–8.) On this record, neither wholesale disclosure nor an *in camera* examination of grand jury minutes is warranted. This ruling does not relieve the

Government of any independent *Brady*, *Giglio*, or Jencks Act obligation arising from particular testimony.

### *iii. Remaining Suspects and Timing*

Defendants also seek witness immigration and criminal-history records, proffer agreements and benefits, and an order labeling favorable information within millions of produced pages. (Dkt. No. 75 at 14, 20–23, 35–43.) The Government disclaims knowledge of additional favorable evidence in its earlier productions and represents that it will disclose impeachment materials by the established December 4, 2026 deadline, thirty days before jury selection. (Dkt. No. 79 at 8, 12–13.) As a general matter, the Constitution does not require disclosure of purely impeachment evidence months before trial when disclosure will afford an effective opportunity to use it. *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983).

On the present record, the Court declines to compel the wholesale production of immigration files, criminal histories, and proffer agreements.[2] That conclusion does not permit withholding a concrete promise, benefit, or other favorable fact merely because it appears in such a file, or withholding information needed sufficiently in advance for effective use at trial. Nor does the present record justify requiring the Government to label each purportedly favorable item within discovery already provided. The Government remains responsible for identifying and timely disclosing information that actually falls within its constitutional obligations.

As to confidential-source records, the Government represents that it is unaware of additional relevant reports for one source. (Dkt. No. 79 at 14.) As to Cabrera's cellphone, the record reflects an earlier representation that nothing relevant was found, followed by the Government's acknowledgment that it had located relevant photographs and communications and would produce

[2] This ruling does not foreclose disclosure of specific impeachment evidence required by *Brady* or *Giglio*, nor does it determine whether particular records may be obtained through otherwise available discovery or compulsory process.

them shortly. (Dkt. No. 75-11 at 2; Dkt. No. 79 at 14.) The Court cannot find on this record that the promised production has occurred. Accordingly, denial of the motion is without prejudice to renewal if those identified materials remain unproduced; the Government must promptly complete the promised production and continue to comply with Rule 16 and *Brady*. This disposition is not a finding that all material on the phone is discoverable.

In sum, Defendants have not established grounds for the sweeping order sought. Their Motion to Compel (Dkt. No. 75) is **DENIED WITHOUT PREJUDICE** to a properly supported request identifying particular withheld favorable evidence or a failure to complete a promised production. The Government's ongoing obligations under *Brady*, *Giglio*, Rule 16, and the Jencks Act remain in effect.

### c. Motion to Disclose Confidential Source

Sawyer also moves to compel the Government to disclose the identity of Confidential Source S-00098297, arguing that the source possesses information relevant to his defense concerning alleged misconduct in the Newark Lead Service Line Replacement Project. (Dkt. No. 76 at 18–26.) The Government has advised the Court that it does not oppose the Motion and will provide the requested information to Sawyer. (Dkt. No. 80.) Accordingly, because the Motion is unopposed, the Court **GRANTS** Sawyer's Motion to Disclose the Identity of a Confidential Source (Dkt. No. 76) and directs the Government to disclose the source's identity to Sawyer.

## IV. CONCLUSION

For the foregoing reasons, the motions to dismiss the Indictment and first Superseding Indictment (Dkt. Nos. 32, 48) are **DENIED**. To the extent the motions seek disqualification of Habba or the former Executive Office officials, those requests are moot in light of the intervening changes in leadership; the Court notes that the request concerning Habba was previously resolved.

(*See* Dkt. No. 41.) Defendants' motion to compel *Brady* materials (Dkt. No. 75) is **DENIED WITHOUT PREJUDICE**, subject to the Government's continuing disclosure obligations and its representation that relevant Cabrera cellphone materials will be produced promptly. Sawyer's Motion to Disclose (Dkt. No. 76) is **GRANTED**.

An appropriate Order will issue.

Dated: October 30, 2026

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE